AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

625 Wrelton Drive
San Diego, California 92037

Case No.

**FILED**
NOV 13 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                             DEPUTY

'19MJ - 5058

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the ___Southern___ District of ___District___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 42 USC 6928(d)(2) | Unlawful Transportation of Hazardous Waste |
| 42 USC 6928(d)(5) | Transportation of Hazardous Waste Without a Manifest |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Bradlee Godshall, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/13/2019

*Judge's signature*

City and state: San Diego, California       Hon. Andrew G. Schopler, US Magistrate Judge
*Printed name and title*

## ATTACHMENT A

625 Wrelton Drive, San Diego, California is a large, two story, yellow/beige stuccoed residential building. The residence has a red/orange tile roof. The residence is bounded by Tourmaline Beach City Park access and parking to the South and Wrelton Drive to the North. Two residences flank the location at 615 and 635 Wrelton Drive respectively. The property slopes downward as one goes from North to South. (See photo attached as Exhibit 1.)

Access from the sidewalk is through a secured solid wooden gate. The gate is fronted by three steps leading up the gate, The numeral 625 on individual decorative tiles, is inset on a riser of the steps. A call bell is located to the left of the gate.

At the far eastern edge of the property an additional access way is observed to run along the property terminating in an open work metal gate set back from the sidewalk approximately 50 feet. To the West a solid wooden gate, approximately six feet high, extends from the front right corner of the home to the property line.

The residence has a driveway which leads to a two car garage door. Above the garage door a balcony which runs approximately half the length of the second story is observed.

To the left of the driveway is an enclosed courtyard area leading to the eastern half of the property. Access to this area is secured by an open metal work gate. This courtyard is also accessed by the aforementioned front gate. The front entrance to the home itself can be observed if one stands on the top step before the solid wooden gate.

Looking into the property from the public access to Tourmaline Beach Park one notes the residence appears to be three stories tall in the rear. Of particular note is the presence of a roughly square building, approximately 50 feet by 50 feet, appearing to be two stories tall with sliding glass doors on the second level which comprise the entirety of the Southwest face of the outbuilding. There appears to be a balcony abutting the sliding doors. A solid colored wall appears to be below the balcony. The outbuilding sits below the main residence and can be accessed via a set of stairs leading from the rear of the residence to the outbuilding. The outbuilding is of the same color scheme as the main house but has a flat roof.

# EXHIBIT 1



## **ATTACHMENT B**

### ITEMS TO BE SEIZED

The items to be seized are evidence of violations of Title 42 U.S.C. § §§6928(d)(2), Illegal Transportation of Hazardous Waste, and Title 42 U.S.C. §6928(d)(5), Transportation Without a Manifest, for the period from January 1, 2017 to present:
1. Waste chemicals, including but not limited to ferric chloride, alkaline, filter cake, cesium and selenium; and
2. Records evidencing dominion and control of the chemicals and the premises.

## **A F F I D A V I T**

I, BRADLEE GODSHALL, being duly sworn, hereby declare and state:

1. I am a Special Agent of the Federal Bureau of Investigation. Following a four month training program at the FBI Academy, I entered into duty assigned to the San Diego Division in May 1995. Since that time I been assigned to investigate complex white collar crime, specifically the areas of environmental crimes and health care fraud. Over my 24-year career, I have investigated numerous cases involving violations of the Clean Water Act, the Resource Conservation and Recovery Act, and the Clean Air Act, as well as various schemes involving health care fraud to include the illegal distribution of unapproved and counterfeit pharmaceuticals, international money laundering, staged accident schemes, and other health care schemes defrauding federal health programs and private health insurers.

2. My duties and responsibilities as an FBI Special Agent involve the investigation of violations of all federal laws, including the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(d).

3. I am familiar with the facts set forth below based on my investigation, as well as my review of records and conversations with other agents of the FBI, investigators from the San Diego District Attorney's Office, and representatives of the San Diego County Department of Environmental Health Hazardous Materials Division (DEH). This affidavit is made in support of an application for search warrants authorizing any agent of the FBI, U.S. Environmental Protection Agency (EPA), and U.S. EPA technical assistance staff (with appropriate assistance from other agencies including the San Diego County Department of Environmental Health, members of the San Diego County Environmental Task Force and any other agency necessary to assist in the execution of the search warrant) to search the premises of three residential properties in San Diego, California, where hazardous waste generated by Curtis Technology, Inc. was transported and stored, further described in Attachment A attached hereto, to wit:

(1) 625 Wrelton Drive, San Diego, California

1

(2) 14388 Bourgeois Way, San Diego, California, and

(3) 14419 Corte Morea, San Diego, California. This affidavit is made for the purpose of demonstrating probable cause for the requested warrant and does not set forth all of my knowledge of, or investigation into, this matter.

4. The premises described in Attachment A is believed to contain evidence of and instrumentalities of criminal violations of the Resource Conservation and Recovery Act ("RCRA," 42 U.S.C. § 6928(d)). Specifically, it is believed that Curtis Technology has been illegally transporting hazardous waste to the locations to be searched, and illegally storing it there.

## Legal Framework

5. Section 6928(d)(2) of Title 42 of the United States Code provides that "Any person who knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter either (A) without having obtained a permit [under this subchapter] . . . or, (B) in knowing violation of any material condition or requirement of such permit [issued under this subchapter] . . ." shall be guilty of an offense punishable by up to five years in custody and a fine of up to $50,000 per day of violation.

6. A "hazardous waste" is defined as "a solid waste that because of its quantity, concentration or physical, chemical or infectious characteristics may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." A solid waste means "any garbage, refuse...and other discarded material, including solid, liquid or semisolid, or contained gaseous material resulting from industrial, commercial, mining and agricultural operations and from community activities . . . ." 42 U.S.C. § 6903(27).

7. The storage, treatment, transportation and disposal of hazardous wastes are subject to regulations promulgated by EPA, set forth at 40 C.F.R. Part 260, *et seq*. States may be authorized to administer and enforce hazardous waste management programs in lieu of the federal program. EPA authorized the State of California to

2

administer the base RCRA program effective August 1, 1992. 57 *Fed. Reg.* 32726 (July 23, 1992). California's regulations pertaining to RCRA hazardous waste definition and management are set forth in Title 22 of the California Code of Regulations, § 66261 *et seq.* In San Diego County, the San Diego County Department of Environmental Health Services is the agency that is charged with conducting inspections for permits issued by the State of California for hazardous waste treatment, storage and disposal, pursuant to RCRA.

8. A "hazardous waste" is defined by RCRA as a "solid waste" that is also "hazardous. A solid waste is "any discarded material that is not excluded." A discarded material is a material which is either abandoned, recycled or considered inherently waste-like. Materials are solid waste if they are abandoned by being disposed of, burned or incinerated, or accumulated or stored before or in lieu of disposal. 40 C.F.R. § 261.2, 22 C.C.R. § 66261.2.

9. A "hazardous waste" is a solid waste that exhibits any of the four characteristics identified in the regulations, namely, ignitability, corrosivity, reactivity or toxicity, commonly referred to as "characteristic wastes," or that is specifically listed in the regulations, (commonly referred to as "listed wastes." 40 C.F.R. § 261.3. A solid waste has the characteristic of corrosivity if a representative sample of it is aqueous and has a pH of less than or equal to two or greater than or equal to 12.5. 40 C.F.R. § 261.22(a)(1). A hazardous waste has the characteristic of reactivity if a representative sample of it reacts violently with water. 40 C.F.R. § 261.23(a)(2). A solid waste has the characteristic of ignitability if a representative sample is a liquid with a flash point of less than 140 degrees Fahrenheit, as determined by the test method in the regulations. 40 C.F.R. § 261.21(a)(1).

10. The term "storage" means the containment of hazardous waste, either on a temporary basis or for a period of years, in such a manner as not to constitute disposal of such hazardous waste. 42 U.S.C. § 6903(33). "Storage" is further defined by regulation as, "the holding of hazardous waste for a temporary period, at the end of

3

which the hazardous waste is treated, disposed of or stored elsewhere." 40 C.F.R. § 260.10, C.C.R. § 66260.10.

11. A generator may accumulate hazardous waste on site for 90 days or less without a permit provided that it complies with regulatory guidelines on the manner in which the hazardous waste is stored, and labeled. The stored hazardous waste is required to bear a label indicating that it is hazardous waste, including the nature of the waste and the date it began to be accumulated. 40 C.F.R. § 262.34(a), 22 C.C.R. § 262.34(a). A generator who generates more than 1,000 kilograms of hazardous waste in any calendar month may generally store the waste on site for up to 90 days providing it complies with the requirements of 40 C.F.R. § 262.34. A generator who generates more than 100 kilograms of hazardous waste but less than 1,000 kilograms of hazardous waste in any calendar month may generally store the waste on site for no more than 180 days provided it complies with the requirements of 40 C.F.R. § 262.34(f), 22 C.C.R. § 66262.34(d). A generator who generates less than 100 kilograms of hazardous waste in a calendar month is a conditionally exempt small quantity generator, which may accumulate hazardous waste on-site. If such a generator accumulates at any time 1,000 kilograms or greater, all of those accumulated wastes are subject to regulation under the provisions covering generators of greater than 100 but less than 1,000 kilograms of hazardous waste.

12. If a generator stores hazardous waste on site in excess of the time period allowed, the generator becomes a storage facility, requiring a permit for such storage. During the period from January 2016 to the present, the records of the State of California indicate that no permit was issued to Curtis Technology, Inc., Alex Jvirblis or the Alex Jvirblis Trust for storage of hazardous waste at any of the three sites at issue.

13. Section 6928(d)(5) of Title 42 of the United States Code provides that "Any person who knowingly transports without a manifest, or causes to be transported without a manifest, any hazardous waste…required to be accompanied by a manifest.

. . ." shall be guilty of an offense punishable by up to two years in custody and a fine of up to $50,000 per day of violation.

14. Off site shipments by large quantity generators (1,000 kg or more per month) and small quantity generators (100-1,000kg/month) require a manifest. 40 CFR §262.20. Off site shipments by conditionally exempt small quantity generators (less than 100 kilograms per month) may be transported without a manifest only if the waste is transported to a state permitted solid waste facility, a recycling facility that reclaims waste, or a federally permitted disposal facility. 40 CFR §261.5(g)(3).

### Investigation Regarding Curtis Technology, Inc.

15. I am familiar with the facts set forth in this affidavit based on my discussions with various officials and employees of the EPA and the San Diego District Attorneys Office, as well as my review of documents, including records from the San Diego County Department of Environmental Health Services, Hazardous Materials Division ("DEH").

16. The records of the California Secretary of State indicate that Curtis Technology, Inc. ("Curtis") was incorporated on June 11, 1981, by Alex C. Jvirblis. The current corporate status is identified as "Active" and the agent's address is listed as 11391 Sorrento Valley Road in San Diego, California, 92121. The company website, curtistechnology.com, provides Alex Jvirblis as the technical contact and Daksha Dave as the business contact, at the address on Sorrento Valley Road. The website notes that Curtis has particular skills in the "metallization of micro surfaces," and services "leading electronics, aerospace and oceanographic firms." The website further states that "Curtis is also equipped to perform a variety of metal forming, cutting and finishing operations."

17. I reviewed a copy of the San Diego County death certificate for Alex Jvirblis, which indicated that he passed away on August 22, 2019.

18. On November 5, 2019, I learned that DEH had received information regarding possible illegal transportation and storage of hazardous waste by Curtis. On November 5, 2019, DEH was contacted by Robert Hockenbrought. Hockenbrought

advised that he was the nephew of Alex Jvirblis, the owner of Curtis, and had come to San Diego to attend his uncle's funeral. Because Alex Jvirblis had no surviving spouse or children, Hockenbrought might eventually be a beneficiary of the Jvirblis estate. Hockenbrought has filed a civil suit challenging the probate of the estate. Hockenbrought advised that while he was in San Diego he was approached by Curtis employee Franciso Santos. Santos told Hockenbrought that he had been directed by Alex Jvirblis to transport containers of waste chemicals and store them at a residence owned by Jvirblis in La Jolla. Santos advised Hockenbrought that he placed the waste in the rear of the residence, underneath an unattached recreation room that was elevated. Santos told Hockenbrought that after the death of Alex Jvirblis, he advised Curtis employees Daksha Dave and My Nguyen about the location of the chemicals, and was told not to worry about it and he was no longer allowed to go to those locations.

19. On November 8, 2019, the FBI interviewed Francisco Santos, together with San Diego District Attorney Investigator Victor Ray, at Santos' residence in Murrieta, California. Santos stated that he had been employed at Curtis as a maintenance worker for approximately ten years. During that time, Santos worked directly for Alex Jvirlbis. Beginning in 2017, Santos stated that, at the direction of Jvirblis, he transported various chemicals (both unused and waste) to be stored at three residences owned by Jvirblis. Santos identified those locations as 625 Wrelton, San Diego; 14388 Bourgeois Way, San Diego; and 14419 Corte Morea, San Diego. Santos stated that he knew the chemicals were hazardous, and that some could react with others stored at the same location if they were to come in contact with each other. Santos stated that he had been to the residences prior to 2017 with Jvirblis and had observed containers of unknown chemicals at the residences prior to his first deliveries at each location. Santos advised that the chemicals he delivered were stored in five gallon buckets with lids and jars with lids. Santos stated that he believed that he delivered approximately 7 or 8 one gallon jars of Selenium, 1 or 2 one gallon jars of Cesium and 15 gallons of diluted Ferric Chloride to the Wrelton Drive address. Santos

6

stated that he last transported chemicals to the Wrelton address in 2017, but that the chemicals he transported there were still on site the last time he was there, in March of 2019. Santos further stated that he had seen the stored chemicals at the other two houses as recently as July of 2019. According to Santos, he brought approximately 10 buckets of filter cake (solids strained from liquids or sludges), along with some Ferric Chloride and Alkaline to the Corte Morea address, and an unknown amount of Ferric Chloride and Alkaline to the Bourgeois Way property. Santos advised that all three residences where the chemicals were stored were unoccupied, and that none of the chemicals were labeled as hazardous waste.

20. The records of the San Diego County Recorder indicate that the property at 625 Wrelton Drive, San Diego (in the La Jolla zip code), was purchased by Alex Jvirblis in 2000 and transferred to the Alex E Jvirblis Trust in 2003. The property at 14388 Bourgeois Way was purchased by Alex Jvirblis in January of 2014, while the property at 14419 Corte Morea was purchased by Alex Jvirblis in May of 2016.

21. The DEH records indicate that the most recent inspection occurred at the Curtis facility on Sorrento Valley Road on May 8, 2019. The inspection report described the production processes at Curtis, noting that, "The core metal finishing operation conducted is chemical milling of mostly nickel/iron alloy material using a ferric chloride etch machine." The process was further described as taking "place in a ferric chloride etch machine that discharges rinse wastewater to an aggregate waste sump and recycles it through three clarifiers. To remove any sediments from the bottom of the clarifiers, rinse water is pumped out from one of the tanks at a time and sediments are scraped off and removed manually with a shovel." Alex Jvirblis told the inspector that all sediments removed from the clarifiers "are managed as hazardous waste." The report noted that Curtis had previously used a filter press but it was taken out of service in August of 2017. The inspection report noted that the company had approximately 7 employees.

22. The DEH records also contained a report of an inspection conducted at the Curtis facility on Sorrento Valley Road on March 21, 2016. On that date, waste

7

samples were taken by DEH of the core metal finishing operation. The laboratory results of the samples indicated that the process generated several different hazardous wastes, including spent ferric chloride process baths (which was a corrosive waste), ferric chloride filter cake (which was a waste having high levels of nickel and cobalt so as to be considered toxic under California law) and waste solvents (which was a waste having the characteristic of ignitability). The inspection report noted seven violations, including unauthorized treatment of hazardous waste (the ferric chloride wastewater) and hazardous waste not accumulated in a proper container (alkaline). The report stated that the filter cake waste was managed as hazardous waste, using the RCRA waste code F006 (wastewater treatment sludge from electroplating operations, a listed waste). The report noted that Jvirblis refused to sign the report, acknowledging he had received it, refused to perform the corrective action because he believed it was unnecessary and escorted the inspector off the premises.

23. DEH records reveal that following the 2016 inspection, San Diego County instituted administrative action against Curtis to ensure corrective action. On August 29, 2017, a Notice of Compliance and Final Order was issued (Docket No. SD-ENF-16-108195), which required Curtis to comply with the DEH regulations, and to pay a penalty of $20,000, and costs of $5,166.

24. DEH records further showed that Curtis disposed of hazardous waste on five occasions between 2017 and the present, using hazardous waste manifests. In February of 2017, Curtis disposed of 110 gallons of waste ferric chloride solution in March of 2018, using the waste code D002 (for corrosive waste). On June 15, 2017, Curtis issued three manifests. One manifest was for used oil, which is not regulated as a hazardous waste under RCRA. The other two manifests involved waste flammable liquids (solvents, manifested under RCRA waste code D001), and 500 pounds of a hazardous waste solid manifested under RCRA waste code F006 (believed to be filer cake). In March of 2018, Curtis disposed of 165 gallons of waste ferric chloride solution, using the waste code D002 (for corrosive waste). No manifests

8

could be located for the disposal of any hazardous waste from the facility in 2019. All manifests were signed by Frank Santos.

25. The National Oceanic and Atmospheric Administration maintains a database of chemicals for emergency responders, known as CameoChemicals. According to this website, ferric chloride is a corrosive, and must be placarded as such under Department of Transportation regulations. The CameoChemicals database indicates that Cesium is highly flammable, and spontaneously flammable in air at room temperature. It also reacts with water to generate enough heat to ignite the hydrogen produced during the reaction, and to generate caustic cesium hydroxide. Cesium also reacts violently with most acids. Selenium is identified by CameoChemicals as a toxic, which may be fatal if inhaled, swallowed or absorbed through the skin. On November 11, 2019, I was advised by a member of the DEH Hazardous Materials Incident Response Team that Selenium is a RCRA regulated metal with RCRA waste code D010 and a regulatory threshold of 1mg/l.

26. Based on the foregoing, there is probable cause to believe that Curtis Technology has illegally transported hazardous waste to the three sites and is illegally storing hazardous waste at the three sites without a permit, , in violation of RCRA, Title 42, United States Code, Section 6928(d)(2) and (5). There is further probable cause to believe that the premises described more fully in Attachment A contains evidence and instrumentalities of violations of the Resource Conservation and Recovery Act (42 U.S.C. § 6298(d)(2) and (5)), as further described in Attachment B hereto.

_____
Bradlee Godshall, Special Agent

Sworn to and subscribed in my presence this 13th day of November, 2019.

_____
HONORABLE ANDREW G. SCHOPLER
United States Magistrate Judge

9